UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDULHAQ RAHIM,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03476-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Abdulhaq Rahim's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons discussed below, the Court grants in part and denies in part the petition.[1]

## I. BACKGROUND

Rahim is a native and citizen of Afghanistan. Dkt. No. 11 at 1. In 2022, he sought asylum in the United States because he feared he would be "tortured or killed by the Taliban." Dkt. No. 2

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

at 1. On December 5, 2022, United States Border Patrol encountered Rahim near Mexico; Rahim expressed a claim of credible fear of returning to Afghanistan. Dkt. No. 3 at 11–13. Rahim avers that he "passed" his credible fear interview and was released from Immigration and Customs Enforcement ("ICE") custody with a Notice to Appear in Immigration Court and instructions to check-in with ICE. Dkt. No. 2 at 2; *see* Dkt. No. 13-3 at 14 (notice of parole pursuant to "section 212(d)(5)(A) of the Immigration and Nationality Act"). He moved to Jacksonville, Florida to live with his cousin, applied for and was granted work authorization, and worked at an Amazon warehouse. Dkt. No. 2 at 2. In December 2025, Rahim became "afraid" of the political climate in America regarding Afghani immigrants and attempted to seek asylum in Canada. *Id.* He flew from Jacksonville to Seattle and traveled to the border in Blaine, Washington. *Id.* On December 3, 2025, Canadian border officials sent him back to the United States, where he was detained by ICE and was issued a Notice to Appear. Dkt. No. 3 at 9–10. Rahim is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* at 2.

On April 18, 2025, prior to Rahim's journey to Canada and subsequent detention, an Immigration Judge ("IJ") held a hearing on the merits of his immigration claims. The IJ denied Rahim's requests for asylum and withholding of removal, and ordered Rahim removed to Afghanistan. *Id.* at 19–31. Rahim appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which denied his appeal on April 20, 2026. *Id.* at 15–18. On May 8, 2026, Rahim filed a Petition for Review and an Emergency Motion for Stay of Removal with the Eleventh Circuit Court of Appeals. Dkt. No. 11 at 2. On June 25, 2026, the Eleventh Circuit Court of Appeals denied Rahim's motion to stay his removal; his Petition for Review remains pending. Dkt. No. 3 at 14; Dkt. No. 11 at 2–3.

This habeas petition is Rahim's third. He was originally part of a multi-petitioner habeas petition filed on February 10, 2026, but he requested voluntarily dismissal from the case, which

was granted on March 11, 2026. Dkt. No. 11 at 1–2; *see Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *1 (W.D. Wash. Mar. 11, 2026). On April 10, 2026, Rahim filed a second habeas petition, which Judge Theresa L. Fricke granted in part, ordering a bond hearing at which the Government had "the burden of proving by clear and convincing evidence that [he] is a flight risk or a danger to the community." *Rahim v. Hernandez et al.,* 2:26-cv-01241-TLF, Dkt. No. 15 at 6 (W.D. Wash. June 24, 2026).

On June 30, 2026, Rahim appeared at the Tacoma Immigration Court for the court-ordered bond hearing and requested a continuance. Dkt. No. 11 at 2. On July 15, 2026, the IJ conducted the continued bond hearing and denied bond, concluding that the government had established that Rahim was a flight risk. *Id.* at 3; *see* Dkt. No. 3 at 33–37 (bond denial checkbox order dated July 15, 2026 and accompanying memorandum dated August 4, 2026). On July 21, 2026, Rahim appealed the bond denial decision to the BIA, where it remains pending. Dkt. No. 11 at 3.

On September 17, 2026, Rahim filed a third habeas petition. Dkt. No. 1. Respondents[2] filed a return and several exhibits, and Rahim filed a traverse. Dkt. Nos. 10–15.

## II. DISCUSSION

Rahim asserts two claims in his petition. First, he contends that his Fifth Amendment right to due process was violated when the IJ failed to provide him with a constitutionally sufficient bond hearing. Dkt. No. 1 at 21–23. Second, he contends that his continued detention violates his Fifth Amendment right to due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001) because "the government cannot show that his removal is reasonably foreseeable." *Id.* at 23. For these alleged

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

violations, he seeks immediate release, declarations that his detention is illegal based on his two claims for relief, and leave to seek attorney's fees. *Id.* at 23–24.[3]

**A. Legal Standards**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687. "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all

[3] Rahim also requests (in a separate part of his petition) injunctive relief preventing Respondents from "re-detaining him absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that they are a flight risk or danger to the community and that no alternative to detention would mitigate those risks." *Id.* at 19.

'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified).

**B. Rahim's Removal Is Not Reasonably Foreseeable**

The parties concur that Rahim is detained pursuant to 8 U.S.C. § 1231(a)(6) because the BIA denied his appeal of his removal order and the Eleventh Circuit Court of Appeals denied his request for a stay of removal. Dkt. No. 1 at 2, 16; Dkt. No. 10 at 6; *see* 8 U.S.C. § 1231(a)(1)(B)(i)–(ii) (the "removal period begins on the latest of . . . [t]he date the order of removal becomes administratively final" or "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"). The BIA's decision was issued on April 20, 2026, Dkt. No. 3 at 15–18, and in the absence of a court order staying removal, the 90-day removal period began that day and concluded on July 19, 2026. *Accord* Dkt. No. 10 at 1 n.2.

Rahim argues that his removal is no longer reasonably foreseeable, so his continued detention is unlawful. Dkt. No. 1 at 16 (citing *Zadvydas*, 533 U.S. at 689, 699). He avers that although he has been detained for slightly less than the presumptively reasonable six-month period described in *Zadvydas*, it is clear that his removal to Afghanistan is not reasonably foreseeable because ICE is not currently conducting deportation flights to Afghanistan and "ICE officers have told him outright that he cannot be removed to Afghanistan because Afghanistan 'has no government.'" *Id.* at 17–18. Respondents point out that the presumptively reasonable six-month period does not expire until October 20, 2026 (seven days from today), and contend, without elaboration, that Rahim's "detention is neither indefinite nor potentially permanent." Dkt. No. 10 at 6. Respondents also assert that Rahim "has refused to cooperate" with ICE "in completing a travel document application to execute his removal to Afghanistan," which "has prolonged his detention past the presumptively reasonable period." *Id.* (citing *Pelich v. INS*, 329 F.3d 1057, 1062 (9th Cir. 2003))[4]; *see also* 8 U.S.C. § 1231(a)(1)(C) (extending the removal period past 90 days if

[4] This assertion contradicts Respondents' prior assertion that Rahim is still within the presumptively reasonable period.

a noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen]'s departure or conspires or acts to prevent the [noncitizen]'s removal subject to an order of removal"); 8 C.F.R. § 241.4(g)(1)(ii).

"*Zadvydas* did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable." *Rojas Toj v. Mullin*, No. 1:26-CV-1142, 2026 WL 1458900, at *3 (E.D. Va. May 21, 2026) (citation modified). Thus, the fact that Rahim has been detained for fewer than six months does not, on its own, bar him from raising a *Zadvydas* challenge. *See Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("[W]hat *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed."); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in *Zadvydas* outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months.") (quoting *Zadvydas*, 533 U.S. at 700–01). Accordingly, Courts have granted relief under *Zadvydas* prior to the expiration of the six-month presumptively reasonable period "when the petitioner provides clear evidence showing that removal is not reasonably foreseeable." *D.S. v. Hernandez*, No. 2:26-CV-01328-JNW, 2026 WL 1408517, at *3 (W.D. Wash. May 20, 2026); *see, e.g., Ndandu v. Noem*, 819 F. Supp. 3d 1155, 1160–62 (S.D. Cal. 2026) (finding that the six-month presumption is rebuttable and holding that petitioner rebutted the presumption while only being detained for three months); *Hernandez v.*

*Bondi*, No. 25-CV-2020-EPG-HC, 2026 WL 350829, at *3–4 (E.D. Cal. Feb. 9, 2026) (finding presumption rebutted after five-month detention); *Herzardastan v. Noem*, No. 25-CV-3424-AB-DBT, 2025 WL 3768581, at *2 (C.D. Cal. Dec. 23, 2025) (finding presumption rebutted after four-month detention). If the rule were otherwise, "the Government would be permitted to detain noncitizens ordered removed for up to six months even when their removal is impossible." *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5 (D. Md. Sept. 8, 2025).

Here, Rahim has shown that his removal is not foreseeable. He notes that "[c]ourts have recently found that 'Afghanistan is in turmoil under Taliban rule, and the United States does not recognize the Taliban as the government of Afghanistan, such that there is no United States Embassy in Afghanistan.'" Dkt. No. 1 at 17–18 (quoting *Rahmani v. Scott*, 2:26-cv-02423-JNW, 2026 WL 2581952, at*4 (W.D. Wash. Sept. 1, 2026)). He also cites to research documenting and tracking removal flights showing that there have been no recent ICE deportation flights to Afghanistan. *Id.* at 18 & n.3 (citing *ICE Flight Monitor, Human Rights First*, Monthly Reports from Feb. 2026 – Aug. 2026, available at https://www.humanrightsfirst.org/ice-flight-monitor). Finally, he avers that ICE officers told him they could not send him to Afghanistan "because Afghanistan 'has no government,'" and they "also could not send [him] to another country because the court ordered [him] to be removed to Afghanistan." Dkt. No. 2 at 3–4.

Respondents also argue that Rahim's refusal to assist in obtaining travel documents and to sign a Form I-299a demonstrates his failure to cooperate and justifies extending his removal period. Dkt. No. 10 at 6–7; *see also id.* at 4. However, Respondents do not rebut Rahim's evidence that his cooperation (or lack thereof) would not have made a difference with respect to his removability because the United States is currently not able to effect his removal to Afghanistan. *See generally* Dkt. No. 10. The Court notes that recent decisions support Rahim's representations regarding removals to Afghanistan. *See, e.g.*, *Safi v. Chestnut*, No. 1:26-CV-5728-DC-CSK, 2026

WL 2676854, at *3–4 (E.D. Cal. Sept. 11, 2026) (collecting cases and noting that "[o]ther courts agree" with petitioner's representations that "Afghanistan currently has no diplomatic presence in the United States" and "it does not appear that diplomatic relations between the government of the United States and the government of Afghanistan under the Taliban will resume in the foreseeable future"); *Momand v. Blanche*, No. 2:25-cv-2772-GJL, 2026 WL 2603175, at *3 (W.D. Wash. Sept. 3, 2026) (finding that petitioner's argument that his removal to Afghanistan was not reasonably foreseeable was supported by "the poor diplomacy and lack of a repatriation agreement between the United States and Afghanistan"); *Ahmadzai v. Mullin*, No. 26-CV-2641 JAO (MSB), 2026 WL 1333753, at *3 (S.D. Cal. May 13, 2026) (finding that removal was not reasonably foreseeable where Respondents failed to "contest Petitioner's assertion—and the cases in support—that Afghanistan is not accepting return of its nationals"); *Msharif v. Hernandez*, No. 2:26-CV-01121-GJL, 2026 WL 1256140, at *2 (W.D. Wash. May 7, 2026) ("[D]ata published in April 2026 shows that only 9% of all Afghan removals since 2022 have actually been removed to Afghanistan, while the remaining 91% were removed to third countries, such as Canada[.]"); *Wazir v. Att'y Gen. of United States*, No. 3:26-CV-526, 2026 WL 1122610, at *3 (M.D. Pa. Apr. 24, 2026) ("Any effort to remove [noncitizens] to Afghanistan runs through the Taliban. There are no diplomatic relations between the United States and the present theocratic regime controlling Afghanistan.").

The Court concludes that, on this record, Rahim's removal is not reasonably foreseeable, and his detention has thus become indefinite. He is therefore entitled to habeas relief. *Zadvydas*, 533 U.S. at 699–700 ("if removal is not reasonably foreseeable, the court should hold continued detention unreasonable . . . the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release"); *see also, e.g., Hoang v. Hyde*, No. 2:26-CV-01591-LK, 2026 WL 1758650, at *4 (W.D. Wash. June 18, 2026); *Tran v. Bondi*, C25-01897-JLR, 2025 WL

3140462, at *3 (W.D. Wash. Nov. 10, 2025) ("ICE is not permitted to hold Mr. Tran indefinitely while it waits for travel documents[.]").[5]

**C. The Court Denies Injunctive Relief**

Rahim also requests an order enjoining Respondents from "re-detaining him absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that they are a flight risk or danger to the community and that no alternative to detention would mitigate those risks." Dkt. No. 1 at 19. Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Even assuming without deciding that the Court has authority to grant injunctive relief in this case, Rahim's petition does not allege that his re-detention is likely. *See* Dkt. No. 1 at 19–20. He contends that "ICE detained him once already in violation of his due process rights," but he was initially detained due to his attempt to seek asylum in Canada and has not shown that Respondents violated his rights in the process. Without further evidence that an unlawful re-detention is likely to occur, his request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897 (citation modified); *see also Indep. Towers of*

[5] Because the Court grants Rahim's petition on *Zadvydas* grounds, it need not consider Rahim's due process claim relating to his bond denial.

*Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for a permanent injunction is denied.

## III. CONCLUSION

For the reasons stated above, Rahim's petition writ of habeas corpus, Dkt. No. 1, is GRANTED in part.

1. Respondents shall release Rahim from custody within 24 hours on conditions compliant with 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3).").

2. The Parties shall file a Joint Status Report by October 14, 2026, confirming that Rahim has been released.

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.* Ctr., No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005) (same); *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) (granting fee award to immigration detainee who prevailed on habeas petition); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that EAJA does not authorize attorney's

fees for successful 28 U.S.C. § 2241 motions); *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021) (same). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 13th day of October, 2026.

Lauren King
United States District Judge